# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

**Russell John Godin**

   **v.**     Case No. 16-cv-461-PB
            Opinion No. 2017 DNH 239
**U.S. Social Security Administration,
Acting Commissioner**


## MEMORANDUM AND ORDER

Russell John Godin challenges the denial of his claim for Social Security disability insurance ("SSDI") benefits and supplemental security income ("SSI"). He argues, among other things, that the administrative law judge ("ALJ") overlooked relevant evidence when determining his residual functional capacity ("RFC") and improperly relied on an opinion from a vocational expert that jobs existed in the national economy that Godin was capable of performing. The Acting Commissioner seeks an order affirming the decision. For the following reasons, I affirm.

## I.  BACKGROUND

**A.  Facts**

Godin was 48 years old at the time of the ALJ's decision.[1]

---

[1] In accordance with Local Rule 9.1, the parties have submitted a joint statement of stipulated facts. Doc. 11. Because that

Doc. 11 at 2. He worked in the past as a flagger, a ski lift attendant, a foreman for a steel construction company, a delivery driver, and a tow truck operator. Doc. 11 at 2. He claimed that he had been disabled since 2013.

Godin's first documented health problem was neck pain, which he reported in November, 2010. Doc. 11 at 2. He also reported left and right ankle pain in 2013. Doc. 11 at 2. Godin also claimed that he suffered from stress and "skin lesion; myalgia; coronary artery disease (CAD); myocardial perfusion scan with stress test; abnormal headaches; hypertension; question of sleep apnea; obstructive hyperlipidemia; insomnia; depression; major dyspnea; chest discomfort; risk of sleep apnea; palpitations; fatigue; ankle pain; morbid obesity; broken CSA; chronic neck pain; history of acute cervical strain; and cervical radiculopathy." Doc. 11 at 3.

Despite claiming to have been disabled since September 3, 2013, Doc. 11 at 2, Godin admitted that he had worked as a tow truck operator from June 2014 through February 2015. Administrative Transcript ("Tr.") 51, 57. During this time, he worked anywhere from 30 hours a week to 60 hours a week. Tr. 51-52.

---

joint statement is part of the court's record, I only briefly discuss the facts here. I discuss further facts relevant to the disposition of this matter as necessary below.

B.   **Procedural History**

Godin filed his claim for both SSDI and SSI on August 2, 2013. The Social Security Administration ("SSA") denied his claim on November 7, 2013. Tr. 155. Godin requested a hearing before an ALJ. Tr. 165. The ALJ conducted a hearing on Godin's claim on August 11, 2015. Tr. 14.

The ALJ denied Godin's claim in a written decision issued on September 3, 2015. In reaching this decision, the ALJ applied the five-step analysis required by 20 C.F.R. § 404.1520 (for SSDI claims) and 20 C.F.R. § 416.920 (for SSI claims). At step one, the ALJ determined that Godin was not currently engaged in substantial gainful activity. Tr. 17. At step two, she determined that Godin had the following severe impairments: "degenerative joint disease of the ankle, obesity, status post stent insertion, a major depressive disorder, and substance abuse." Tr. 17. At step three, she concluded that Godin did not have any of the impairments listed in 20 C.F.R., Subpart P, Appendix 1. Tr. 17-19. At step four, she determined that Godin's RFC allowed him to do "light work as defined in [§] 404.1567(b) and [§] 416.967(b) except he could[:]

> stand or walk for up to six hours in an eight-hour day, but no more than one half hour at a time;
>
> sit for six hours in an eight-hour day, with breaks every two hours;
>
> never climb ladders, ropes, or scaffolds, but occasionally climb ramps or stairs. . . ;

> occasionally reach overhead;
>
> occasionally stoop, kneel, and operate foot controls, but never crouch or crawl. . . ;
>
> work in an environment that does not include concentrated exposure to extreme vibration, heat, or potential hazards like moving machinery, unprotected heights[,] or uneven terrain. . . ; [and]
>
> perform only routine work tasks day-to-day." Tr. 19.

In light of this RFC, the ALJ concluded that Godin could not return to his past relevant work. Tr. 26. Nevertheless, at step five, after considering the opinion of a vocational expert, the ALJ determined that Godin could work in a number of other jobs that existed in the national economy. Tr. 26-27. These included, "small parts assembler," "security guard," "recreation aide," "garment sorter," "cashier," "car wash attendant," or "vending machine attendant." Tr. 27. The ALJ thus found that Godin was not disabled and denied his claims for both SSDI and SSI. Tr. 27-28.

On October 7, 2015, Godin sought review of the ALJ's decision before the Appeals Council. Tr. 8-9. The Appeals Council denied Godin's request for review on August 22, 2016. Tr. 3-5.

## II. STANDARD OF REVIEW

I am authorized under 42 U.S.C. § 405(g) to review the pleadings submitted by the parties and the administrative record

and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner.  That review is limited, however, "to determining whether the [ALJ] used the proper legal standards and found facts [based] upon the proper quantum of evidence."  Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  I defer to the ALJ's findings of fact, as long as those findings are supported by substantial evidence.  Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion."  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the ALJ's factual findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion."  Id. at 770.  If, however, the ALJ "ignor[ed] evidence, misappl[ied] the law, or judg[ed] matters entrusted to experts," her findings are not conclusive.  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).  The ALJ determines issues of credibility and draws inferences from evidence in the record.  Irlanda Ortiz, 955 F.2d at 769.  The ALJ, and not the court, must resolve conflicts in the evidence.  Id.

## III. ANALYSIS

Godin challenges the ALJ's decision by claiming that she ignored or improperly evaluated critical evidence when determining Godin's RFC, and improperly relied upon the vocational expert's inaccurate opinion testimony when finding that Godin could perform a significant number of jobs in the national economy.  I address each argument in turn.

### A. The ALJ's Evaluation of the Evidence and RFC Determination

When evaluating a claim for Social Security benefits, the ALJ must consider all evidence in the record and evaluate any conflicting evidence. Gonzalez-Garcia v. Sec'y of Health & Human Servs., 835 F.2d 1, 3 (1st Cir. 1987).  The ALJ is free to accept each piece of evidence completely, partially, or not at all, provided that she does so on "well-supported grounds."  See Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012).  "[I]f an ALJ has provided well-supported grounds for rejecting testimony regarding specified limitations, we cannot ignore the ALJ's reasoning and reverse the agency merely because the ALJ did not expressly discredit each witness who described the same limitations."  Id.

Here, Godin claims that the ALJ erred by ignoring or improperly weighing: a Work Activity Questionnaire; Dr. Laura Landerman's opinion; the July 2, 2013 opinion of his primary care provider; x-ray results from July 11, 2013; Dr. Rock's

6

opinions from July 29, 2013 and August 29, 2013; Dr. Trina Jackson's November, 2013 opinion that Godin suffers from major depressive disorder; Godin's January 21, 2014 visit with AVH surgical associates; his emergency room visit from March 11, 2014; his cardiovascular stress test from September 2, 2014; and his Functional Capacity Evaluation form from November 11, 2010. I am unpersuaded by Godin's arguments and explain my conclusion by addressing each piece of evidence in turn.

The ALJ permissibly rejected the Work Activity Questionnaire because it was completed by Godin's former supervisor, who was not "a medical source or other person with specialization," and because he continued to work for several years after the completion of the questionnaire. Tr. 25. See Valentine v. Comm'r Social Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (rejecting the opinion of a former supervisor who testified on behalf of a claimant out of sympathy); Allen v. Colvin, No. 15-cv-04162, 2016 WL 1529692, at *16 (S.D. W.Va. March 18, 2016) (discounting evaluation of claimant's knee problem because the evaluation took place two years before claimant ceased working).

Substantial evidence also supports the weight the ALJ gave to Dr. Landeman's opinion. Although the ALJ gave Dr. Landeman's opinion "significant weight," she discounted the portion of the opinion in which Dr. Landeman said that Godin required a semi-

7

isolated work station and a non-critical supervisor this was inconsistent with both Godin's treatment history and Dr. Jackson's opinion, which was entitled to more weight because Dr. Jackson was an examining physician.  Tr. 25.  An ALJ is entitled to make such judgments.  See Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991) (it is appropriate to give the opinion of an examining physician more weight than that of a non-examining physician); Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (ALJ can discount the opinion of a doctor if it is inconsistent with other evidence in the record).

The ALJ also noted the symptoms that Godin reported in his July 2, 2013 visit to his primary care provider, including "atypical chest pain and heart 'fluttering' . . . three to four times per week," but concluded that "these symptoms appear to be quite mild."  Tr. 21, 667.  An ALJ ordinarily can discount a claimant's allegation that he has a medical issue if the claimant has not sought treatment for the issue, Irlanda Ortiz, 955 F.2d at 769, continued to work after being diagnosed with the issue, Allen, 2016 WL 1529692, at * 16, or consulted a treating source who stated that the issue should not limit the claimant.  Foley v. Astrue, No. 09-10864-RGS, 2010 WL 2507773, at *8 (D. Mass. June 17, 2010).  The ALJ permissibly gave Godin's heart troubles little weight because he sought "only

erratic and inconsistent treatment" for his heart problems, he continued to work long after first reporting the heart problems, and one of his own doctors, Dr. Daniel Van Buren, stated that his heart problems should not limit his ability to work. Tr. 21.

The ALJ noted that Godin had an x-ray on July 11, 2013, which revealed "degenerative changes toward the medial side of the ankle joint."[2] Tr. 20-21, 663. The ALJ, however, permissibly discounted the severity of Godin's ankle injury because he did not seek corrective surgery. See Wilson v. Colvin, 17 F.Supp.3d 128, 140 (D.N.H. 2010) (ALJ may consider the absence of treatment for a particular injury as a factor in determining whether the claimant's allegations of injury are credible).

The ALJ considered Dr. Jackson's November, 2013 report, which stated that Godin suffered from major depressive disorder and "presented as poorly groomed, . . . with poor eye contact, no difficulty answering questions, occasional tearfulness, irritable mood, blunted affect, low-average intelligence, no deficits in long-term memory, logical and organized thought process and content, and normal functioning on the Folstein Mini Mental Status Examination." Tr. 23. The ALJ acknowledged that

---

[2] The ALJ also evaluated the evidence of Godin's ankle issues in Dr. Rock's reports from July 29, 2013. Tr. 20, 21, 22, 698, 704.

9

Godin suffered from "major depressive disorder" in developing his RFC determination, but noted that "overall, this objective clinical presentation is quite mild and fails to support any limitations beyond those cited in the residual functional capacity above."  Tr. 23.  This determination was permissible both because Godin himself stated that his mental impairments were "situational" and because Godin was not receiving treatment for them.  Tr. 21.  See Wilson, 17 F.Supp.3d at 140.

While the ALJ never specifically discussed Godin's January 21, 2014 visit to AVH surgical associates, she did consider the medical issues he complained about during that visit, which were mentioned elsewhere in the ALJ's decision.  During the January 21, 2014 visit, Godin stated he had, "trauma/injury, recent weight loss . . . hearing impairment, tinnitus, neck pain . . . palpitations, edema, claudication . . . nausea, indigestion, flatulence . . . urine frequency, nocturia, Polyuria . . . arthralgia, joint stiffness, swelling of joints, shoulder pain, arm pain, knee pain, ankle/foot pain, heel pain, muscle cramps, weakness, recurrent sprains . . . pruritus, insect bite, rash, tumors/lumps . . . memory loss . . . dizziness . . . clumsiness . . . paresthesias . . . headache . . . localized weakness . . . loss of balance . . . heat intolerance . . . anxiety, depression, nervous breakdown, irritability, [and] restlessness."  Tr. 714.  All of these symptoms (with the

exception of "indigestion") were present during Godin's July 29, 2013 visit to the doctor, which the ALJ specifically considered in her opinion. Tr. 20, 21, 22, 704. Under these circumstances, the ALJ's failure to specifically discuss the January 21, 2014 visit was not reversible error. See Grenier v. Colvin, 2015 DNH 133, *2 (ALJ need not mention every piece of evidence in the record if it is cumulative of other evidence).

While the ALJ did not specifically mention Godin's March 11, 2014 visit to emergency room where he complained of chest pain, she did discuss his September 2, 2014 cardiovascular stress test, which did not reveal any significant heart damage. Tr. 21. She also noted that Godin's cardiologist, Dr. Daniel Van Buren, determined that Godin "remains asymptomatic and is active without specific limitations." Tr. 21. The ALJ also concluded that Godin's heart issues were "quite mild," were unaccompanied by any chest pain, and were unsupported by the September, 2014 testimony. Tr. 21-22. Therefore, the ALJ properly relied on the opinion of Godin's treating physician when assessing his heart problems even though the ALJ did not specifically discuss the emergency room visit. See Douglas v. Colvin, 2016 DNH 176, *6 (internal citations omitted) ("A treating source's opinion is entitled to controlling weight so long as that opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

11

inconsistent with the other substantial evidence.'").

The ALJ also properly considered Godin's November 11, 2010 Functional Capacity Evaluation. Tr. 24. This evaluation "found that the claimant could perform a fairly wide range of light-exertional work, but would be unable to stoop, crouch, or engage in prolonged neck positioning." Tr. 24. The ALJ discredited some of the limitations identified in the evaluation because it was administered "almost three months prior to the amended alleged onset date" of his disability, Tr. 24, but she nevertheless incorporated much of the evaluation into his RFC, including the limitations on stooping and crouching. Tr. 19. Under these circumstances, the ALJ did not err in failing to include all of the limitations identified in the evaluations into Godin's RFC. See Carmickle v. Comm'r of Social Sec. Admin., 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.").

In summary, I am unpersuaded by Godin's claims that the ALJ ignored or improperly evaluated critical evidence when determining Godin's RFC.

**B.  Vocational Expert Testimony**

Godin also argues that the ALJ erred by relying upon the vocational expert's testimony, which he claims was based on a hypothetical question that did not include all of Godin's

12

relevant severe impairments.  He also faults the expert's testimony because he did not specify whether the jobs listed were full time or part time, he did not state that the jobs listed were currently available, and his testimony was inconsistent with the directory of occupational titles (DOT).

1. Hypothetical question

For the ALJ to rely on the opinion of a vocational expert when determining whether a claimant is disabled, the vocational expert's opinion must be based on a hypothetical question that "accurately portray[s] a claimant's physical and mental impairments." Ealy v. Comm'r of Social Sec., 594 F.3d 504, 516 (6th Cir. 2010); Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994); Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982).

Here, although the ALJ's hypothetical question contained all of the limitations identified in Godin's RFC, Godin nevertheless claims that the hypothetical was incomplete because it did not include "the limitations from Dr. Landeman's assessment," "the evidence submitted by plaintiff's previous employer" (the Work Activity Questionnaire), "the functional capacity evaluation," and "the medical records of the plaintiff's treating orthopedic doctor, Dr. Rock."  Doc. 6 at 15.  This argument is a nonstarter because, as I have explained, the ALJ had already considered and rejected all of this evidence

13

when determining Godin's RFC, and therefore she properly excluded it from the hypothetical question. Tr. 19.

2. Other issues with the vocational expert's opinion

Godin argues that the vocational expert erred by not specifying whether the jobs that Godin could still perform were full time or part time jobs. Godin claims that Social Security Ruling (SSR) 96-8P requires a vocational expert to specify whether the jobs the claimant can supposedly perform are full time or part time. 1996 WL 374184. I disagree. SSR 96-8P merely says that an "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting . . . [for] 8 hours a day, for 5 days a week. . ." It has nothing to do with the vocational expert's opinion, which is based on a hypothetical claimant with the same relevant severe impairments as the claimant. In fact, there is no requirement that the vocational expert testify to only full time jobs, as opposed to part time jobs. Brault v. Social Sec. Comm'r, 683 F.3d 443, 450 n.6 (2d Cir. 2012) ("We reject Brault's argument that the ALJ erred by allowing the V[ocational] E[xpert] to provide employment numbers that must have included part-time positions . . ."); see Liskaitz v. Astrue, 559 F. 3d 736, 745 (7th Cir. 2009).

Godin also claims that the vocational expert erred by not specifying whether the jobs that a hypothetical claimant could

perform were currently available.  Once again, Godin does not cite a single case in support of his argument that this error is sufficient to reverse the ALJ's decision.  In any event, I infer from the ALJ's question that the vocational expert was referring to jobs that were currently available because his testimony about the jobs that Godin could still perform was given in response to the question, "[w]hat kind of work, if any, exists for an individual with these limitations (emphasis added)?"  Tr. at 73.

Finally, Godin claims that the vocational expert's opinion should be disregarded because it specified, inconsistently with the DOT, the number of positions in the national economy for each job Godin could perform.  While the vocational expert's opinion listing which jobs the claimant can continue to perform should be consistent with the DOT, SSR 00-4P, 2000 WL 1898704, the fact that the expert listed the number of jobs in each category does not make her opinion inconsistent with the DOT. See Brault v. Social Sec. Admin. Comm'r, 683 F.3d 443, 446 (2d Cir. 2012) ("[T]he DOT . . . just defines jobs.  It does not report how many such jobs are available in the economy.").

Here, the vocational expert properly relied upon the Selected Characteristics of Occupations ("SCO") to determine the number of available jobs.  Tr. 86.  See Vandemark v. Colvin, No. 13-CV-1467, 2015 WL 1097391, at *12 (N.D. N.Y. March 11, 2015).

There is no indication that the vocational expert's listing of the number of jobs that Godin could perform was inconsistent with the DOT. Furthermore, even if the number of jobs listed by the vocational expert did diverge from the DOT, such a discrepancy would not require reversal of the ALJ's decision. See Brault, 683 F.3d at 450.

## IV. CONCLUSION

For the aforementioned reasons, I grant the Acting Commissioner's motion to affirm (Doc. No. 9) and deny Godin's motion to reverse (Doc. No. 6). The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

                                /s/Paul Barbadoro
                                Paul Barbadoro
                                United States District Judge

November 16, 2017

cc: Christine Woodman Casa, Esq.
    T. David Plourde, Esq.

16